Filed 7/23/25  Hasson Investment v. Sunset Blvd. Properties CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| HASSON INVESTMENT, LLC, | B330413 |
| Plaintiff, Cross-defendant, and Appellant, | (Los Angeles County Super. Ct. No. 21STCV43251) |
| v. | |
| SUNSET BLVD. PROPERTIES, L.P. et al., | |
| Defendants, Cross-complainants, and Respondents. | |
| HASSON INVESTMENT, LLC, | B331301 |
| Plaintiff, Cross-defendant, and Respondent, | |
| v. | |
| SUNSET BLVD. PROPERTIES, L.P. et al., | |

Defendants, Cross-
complainants, and Appellants.

———————

APPEALS from a judgment and a postjudgment order of
the Superior Court of Los Angeles County, Richard L. Fruin, Jr.,
Judge.  Judgment is reversed with directions; appeal from
postjudgment order is dismissed as moot.

Law Office of Kenneth R. Morris and Kenneth R. Morris for
Plaintiff, Cross-defendant, Appellant, and Respondent.

Kilpatrick Townsend & Stockton and Emil W. Herich for
Defendants, Cross-complainants, Respondents, and Appellants.

———————————

This case concerns a dispute over a failed restaurant lease.
Hasson Investment, LLC leased the property from Sunset Blvd.
Properties, L.P., the owner, and Paramount Contractors &
Developers Inc., its agent (collectively, the landlord).  After the
lease terminated, Hasson refused to return the liquor license for
the premises unless the landlord paid it $100,000.  In response,
the landlord withheld $62,000 in deposits Hasson had paid.  Both
sides sued.  Following a bench trial, the trial court concluded the
landlord did not breach the lease by failing to return Hasson's
deposits, but the landlord owed Hasson $42,000 under unjust
enrichment principles.  The court found Hasson breached the
lease by failing to return the liquor license, causing the landlord
to suffer $25,000 in damages—the landlord's cost to obtain a
replacement license.  The result was a net recovery of $17,000 to
Hasson.

Hasson argues the court erred by reducing its unjust enrichment award based on the landlord's $25,000 cost to obtain a new liquor license because the landlord would have had to pay Hasson more than $25,000 for the transfer of the license, had Hasson performed its obligation to return the license. We agree. We further agree the court erred in concluding the landlord did not breach the lease by failing to return some of Hasson's deposits. We reverse and remand for the court to award Hasson $42,000 on its cause of action for unjust enrichment, to determine Hasson's costs, and to consider any request for attorney fees.

The landlord filed a cross-appeal challenging the denial of its motion for attorney fees under Code of Civil Procedure section 998 because it offered to settle for a sum larger than Hasson's ultimate $17,000 recovery.[1] Because we conclude Hasson was entitled to a larger unjust enrichment award as to which the settlement offer was not greater, the cross-appeal is moot. We therefore dismiss the landlord's cross-appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Lease, Its Termination, and the Parties' Dispute*

The parties do not challenge the following factual findings and legal conclusions made by the trial court:

"Heloise Hasson is the owner and sole member of plaintiff Hasson Investment, LLC.[2] [Heloise] is a French citizen; during

---

[1] References to code provisions are to the Code of Civil Procedure, unless otherwise stated.

[2] We refer to the LLC as Hasson and to Heloise Hasson by her first name for clarity.

3

the relevant period she was applying to obtain a V-2 (investment) visa for U.S. residency.

"[Hasson] and Paramount entered into [a] lease under which [Hasson] would open a restaurant in [the] ground floor space of a commercial building [on Sunset Boulevard] . . . owned by defendant Sunset Blvd. Properties, LLC. Defendant Paramount Contractors & Developers, Inc. acted as the agent of Sunset in the lease negotiations. Paramount and Sunset have common ownership. . . .

"The parties signed a lease and the original addendum on March 3, 2021. [Hasson] took possession and began to prepare the premises for restaurant operations. The restaurant never opened. A lease provision provided that the lease terminated on August 31, 2021, unless [Heloise] had by that time acquired a V-2 visa. The visa process required, as its final step, that [Heloise] be interviewed at the U.S. Embassy in Paris. However, due to delays and restrictions caused by the pandemic, the Embassy cancelled successive interviews it had scheduled with [Heloise]. [Hasson's] lawyers notified Paramount . . . that [Hasson] terminated the lease, relying on the provision that the lease had terminated on August 31 because [Heloise] had not secured a V-2 visa. Other reasons may have contributed to [Hasson's] decision—delays and disputes about the remodeling, for instance—but such considerations are not relevant to the parties' contractual rights upon the lease termination.

"[Hasson's] termination of the lease did not breach the lease. [Hasson's] conduct afterwards did breach the lease agreement. [Hasson] under the lease had made three pre-payments to the landlord: $30,000 as a security deposit; $12,000 as pre-paid rent; and $20,000 as a liquor license deposit (later

4

described as key money).  Under the lease agreements (four addenda were signed) the landlord was required to provide a liquor license so that the restaurant could sell alcoholic beverages.  The landlord in 2016 had procured a Type 47 liquor license[3] limited to sales at the . . . Sunset [Boulevard] location, and the landlord transferred that license to [Hasson].  [Hasson], however, under the lease was required to pay $60,000 in three installments once the restaurant opened to pay the landlord for the use of the liquor license and to transfer it back to the landlord when the lease terminated.  The $20,000 deposit was an initial payment by [Hasson] for use of the liquor license until the license was returned to the landlord.[4]  Under the limitations imposed by a Type 47 liquor license[, the license] had to be used for alcoholic beverage sales [on the Sunset Boulevard premises] for five years, and two years were remaining on that requirement when the landlord transferred the license to [Hasson], but once the five year limitation was satisfied the license could be sold to any qualified user and used at any qualifying location in Los Angeles County.  The liquor license, therefore, could increase in market value after the five-year location restriction was satisfied.

---

3      According to the California Department of Alcoholic Beverage Control (ABC), a Type 47 license "[a]uthorizes the sale of beer, wine and distilled spirits for consumption on the licensed premises."  (See California Department of Alcoholic Beverage Control, *License Types* <https://www.abc.ca.gov/licensing/license-types/> [as of July 15, 2025].)

4      Hasson also paid the landlord an additional $6,000 for the license—the maximum that the landlord could charge under an ABC restriction that prohibited resale of the license for more than $6,000 until the license matured in September 2023.

5

"After terminating the lease, [Hasson] demanded the landlord pay [it] $100,000 for return of the liquor license. This was a breach of the lease terms that required [Hasson] to transfer the license to the landlord when the lease was terminated (for which the landlord was to reimburse to [Hasson] a $6,000 ABC fee and another [approximately] $5,000 administrative fee). A different . . . addendum stated that the parties would negotiate a price for the return of the liquor license, but that provision, in the Court's view, became operational only after the restaurant opened for business (and it never did).

". . . [Hasson] expressed to the landlord that it had to pay [Hasson] $100,000 before [Hasson] would return the liquor license. This was a contract breach, and the landlord at that point was required to mitigate its losses.

"The landlord needed to obtain a liquor license in order to lease the premises to another tenant for restaurant use. The landlord applied for and was fortunate to obtain by lottery another liquor license in October 2021. [Hasson] still has the liquor license the landlord transferred to [it] in September 2021. The landlord now has no need for [Hasson] to transfer back that liquor license, as it incurred the expense of obtaining another liquor license. The landlord paid [approximately] $25,000 to obtain the second liquor license. . . . [Hasson's] breach of the lease agreement by refusing to transfer the liquor license back to the landlord, therefore, caused the landlord to suffer [approximately] $25,000 in damage."

B.      *The Lawsuit, Trial, and Post-trial Procedure*

In November 2021, Hasson filed suit against the landlord, asserting claims for breach of contract, bad faith retention of lease deposits, conversion, and unjust enrichment.  Hasson sought $42,000 in compensatory damages, emotional distress damages, and attorney fees and costs.  It alleged the landlord was required to return the $42,000 in deposits under the lease (the $30,000 security deposit and $12,000 in prepaid rent) and that retaining the funds would unjustly enrich the landlord.  Hasson did not seek to recover the separate $20,000 liquor license deposit.

In September 2022, the landlord cross-complained against Hasson, alleging fraud and concealment, negligent misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, and conversion.  The landlord claimed Heloise misrepresented her intent to operate the restaurant, which induced the landlord to let Hasson occupy the space rent-free and transfer the liquor license to Hasson.  The landlord sought $30,000 in lost rent and $100,000 for the withheld liquor license, plus punitive damages.

A bench trial took place over three days in February 2023.  On the first day, the trial court explained that it typically issued a tentative ruling before closing arguments.  After the close of evidence, on February 23, 2023, the court stated, "I am going to make some tentative comments.  I don't know whether it's a tentative ruling at this point."  Several days later, on February 27, the court issued a "Draft Statement of Tentative Decision" (Tentative Decision), which it served on the parties by email and mail the same day.  It directed the parties to address

7

the Tentative Decision in their closing arguments that had been postponed.

In the Tentative Decision, the court concluded that, given that Hasson breached the lease by not returning the liquor license, the landlord "was entitled to a set off from the deposit amounts that the landlord owed to [Hasson] once the lease was lawfully terminated." The court determined that because the landlord reasonably exercised its right to offset damages, it did not breach the lease by refusing to return the $30,000 security deposit and the $12,000 in prepaid rent, totaling $42,000.

Although the court did not find for Hasson on its breach of contract claim, it found in Hasson's favor on its fifth cause of action for unjust enrichment, concluding the landlord would be unjustly enriched if allowed to retain the $42,000 in lease deposits.[5] The court stated Hasson was "entitled to the return of the deposits that were not earned because the lease was terminated without the restaurant opening for business, minus the additional costs the landlord incurred due to [Hasson's] refusal to return the liquor license. [Hasson] is entitled to the return of the $30,000 security deposit and the $12,000 in pre-paid rent, minus the [approximately] $25,000 that the landlord paid to obtain a second liquor license. [Hasson] is not entitled to recover the $20,000 [it] deposited as the liquor license (key money)

---

[5] Although "unjust enrichment" is not a standalone cause of action under California law and Hasson appeared to have adequate remedies under the lease (*Sepanossian v. National Ready Mixed Concrete Co.* (2023) 97 Cal.App.5th 192, 206-207), the landlord did not raise those arguments and does not challenge Hasson's award under the cause of action Hasson alleged for unjust enrichment. The landlord therefore forfeited any challenge to Hasson's unjust enrichment award.

8

deposit because [it] did not transfer the original liquor license back to the landlord." Accordingly, Hasson was "entitled to a return of $17,000 ($30,000 + $l2,000 - $25,000) from the landlord . . . due to the lease termination."

The court's Tentative Decision rejected all remaining claims and counterclaims, finding no other recoverable damages. It instructed the landlord to prepare the judgment and stated, "both parties to bear their own costs."

On March 7, 2023, the court held closing arguments, which were not transcribed.[6] The court's minute order states: "The matter is called for hearing. The Court had previously issued a Draft Statement of Decision which was emailed and sent via USPS to counsel on 02/27/2022 [*sic*]. The Court hears closing arguments this date. After closing arguments, the Court gives its oral decision and directs counsel for defendant to submit the proposed judgment for the Court to review and sign."

The next day, on March 8, 2023, the landlord lodged a proposed judgment with the court and served a copy on Hasson. The proposed judgment stated, in relevant part: "After hearing the evidence on February 27, 2023, the Court issued a Draft Statement of Tentative Decision which following closing arguments on March 7, 2023, became the Statement of Decision

_____

[6]     Hasson later submitted a declaration from its counsel in support of its motion to vacate the judgment with a summary of its own closing arguments. Hasson's "declaration supporting [its] motion for new trial . . . is not a substitute for [a] reporter's transcript, or [a] settled statement on appeal, nor can it be relied upon to establish what was said by anyone in the course of the trial." (*Ward v. Litowsky* (1970) 5 Cal.App.3d 437, 439-440; see Cal. Rules of Court, rule 8.137(c).)

9

of the Court."  On March 9, the court modified this sentence as follows: "After ~~hearing~~ close of the evidence on February 27, 2023, the Court issued a Draft Statement of Tentative Decision. ~~which following~~ After closing arguments on March 7, 2023, the Court issued its ~~became the Statement of~~ Decision ~~of the Court~~."  The court entered the modified version as its final judgment on March 9, 2023.  The final judgment stated Hasson was to "take from [the landlord] the total sum of $17,000.  Both sides are ordered to bear their own costs."

Hasson timely moved for a new trial and to vacate the judgment and enter a new judgment.  In its motion for a new trial, Hasson argued the court prematurely cut off the time to request a statement of decision and asked the court to issue one, listing seven purported controverted issues but not raising any objections to the findings in the Tentative Decision.  The court held a hearing on the motions in May 2023, again with no reporter present.  The minute order states, "The Motion for New Trial is denied."

Hasson timely appealed.

The landlord brought a motion for attorney fees, contending it had served Hasson with an offer under section 998 to settle Hasson's claims for $21,000, and Hasson then recovered only $17,000.  The trial court denied the motion, concluding that Hasson's attorney fees that were recoverable under the fee provision in the lease should be considered in determining the total amount of Hasson's recovery, not just the $17,000 award.  The court indicated Hasson "was the prevailing party" following the trial of Hasson's claims and the landlord's cross-claims.  It stated its Tentative Decision "improvidently" stated each side

10

was to bear its own costs, but Hasson could have filed a motion to reconsider that "throw-away line" by the court.

The landlord timely appealed from the denial of the motion for attorney fees under section 998.

## DISCUSSION

A.  *Errors in the Statement of Decision Process Were Harmless*

    1.  *Applicable law and standard of review*

Section 632 provides that following a bench trial of a question of fact, upon the request of a party, "[t]he court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial." (§ 632; see *F.P. v. Monier* (2017) 3 Cal.5th 1099, 1102 (*F.P.*); Cal. Rules of Court, rule 3.1590(a).)[7] A statement of decision communicates the facts found by the court and the legal bases for the court's ruling, making a case easier to review on appeal. (*Alafi v. Cohen* (2024) 106 Cal.App.5th 46, 61 (*Alafi*).) "A statement of decision need not respond to 'every point raised by a party or make an express finding of fact on each contested factual matter; it need only dispose of all basic issues and fairly disclose the court's determination as to ultimate facts and material issues in the case.'" (*Id.* at p. 60; accord, *Slone v. El Centro Regional Med. Ctr.* (2024) 106 Cal.App.5th 1160, 1171.)

The trial court first "must announce its tentative decision by an oral statement, entered in the minutes, or by a written statement filed with the clerk." (Rule 3.1590(a).) For a trial that lasts longer than one calendar day or eight hours over multiple

---

[7]    Undesignated references to rules are to the California Rules of Court.

days, the parties have 10 days from the announcement or service of the tentative decision, whichever is later, to request a written statement of decision that addresses the controverted issues a party wants the court to address.  (§ 632; rule 3.1590(d); *Alafi*, *supra*, 106 Cal.App.5th at pp. 60-61.)

After the court prepares the statement of decision and proposed judgment, the parties may file objections. (Rule 3.1590(g).)  Only after the court and the parties have followed this procedure, or the parties have waived their right to request a statement of decision or make objections, may the court enter judgment.  (Rule 3.1590(h)-(l).)

" 'A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness.' " (*Kaushansky v. Stonecroft Attorneys, APC* (2025) 109 Cal.App.5th 788, 799.)  Generally, "[u]nder the doctrine of implied findings, the reviewing court must infer, following a bench trial, that the trial court impliedly made every factual finding necessary to support its decision." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 48.)  But if a party requests a statement of decision and "the statement of decision does not resolve a controverted issue or is ambiguous, and the omission or ambiguity was brought to the attention of the trial court, 'it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue.' " (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981; accord, *Alafi*, *supra*, 106 Cal.App.5th at p. 70.)

Errors in the statement of decision process "are subject to harmless error review." (*F.P.*, *supra*, 3 Cal.5th at p. 1116; see *Heaps v. Heaps* (2004) 124 Cal.App.4th 286, 292 ["the premature

12

signing of a proposed statement of decision does not constitute reversible error unless actual prejudice is shown"].)  Where a trial court's failure to follow the correct procedures for issuing a statement of decision "effectively shield[s] the trial court's judgment from adequate appellate review," such a failure may require reversal.  (*F.P.*, at p. 1116.)  " '[T]he more issues specified in a request for a statement of decision and left unaddressed by a court's failure to issue one, the "more difficult, as a practical matter, [it may be] to establish harmlessness." ' " (*Alafi, supra,* 106 Cal.App.5th at p. 70.)

  2. *The trial court did not follow the proper process for issuing a statement of decision*

  The trial court did not follow the statutory procedure for issuing a statement of decision following a trial lasting longer than eight hours over several days.[8]  On February 27, 2023, the court served the Tentative Decision on the parties by email and mail.  Then a minute order from March 7 states that after hearing closing arguments, the court "g[ave] its oral decision and direct[ed] counsel for [the landlord] to submit the proposed judgment for the Court to review and sign."  The court entered

---

[8] The landlord asserts there is no reliable record showing the trial's length was greater than eight hours over the three days of trial because Hasson's estimate of 10.5 hours does not account for multiple recesses.  (See § 632; rule 3.1590(n) [a party must request a statement of decision before the matter is submitted for decision when "a trial is completed within one day or in less than eight hours over more than one day"].)  However, we do not subtract routine recesses from the time of trial.  (See *In re Marriage of Gray* (2002) 103 Cal.App.4th 974, 980 [the time of trial includes "such routine recesses as occur during the day"].)  The record also supports Hasson's calculation.

13

judgment on March 9.  Whether the 10-day period in which to request a statement of decision is measured from February 27 or March 7, judgment was prematurely entered without allowing for the request.[9]  (§ 632; rule 3.1590(d), (h)-(l).)  The court entered its judgment only two days after giving its oral decision, on March 9.  And assuming the service of the Tentative Decision on February 27 triggered the 10-day period for requesting a statement of decision, Hasson correctly argues that 10-day period was extended by two court days because the court served the Tentative Decision electronically.  (See §§ 1010.6, subd. (a)(3)(B), 1013, subd. (g); *Injectronics, Inc. v. Commodore Business Machines, Inc.* (1979) 100 Cal.App.3d 185, 188.)  Twelve days from February 27 was Saturday, March 11, and thus the deadline was extended to Monday, March 13.  (§ 12, subd. (a).)

> 3.  *The court's failure to follow the proper process for issuing a statement of decision does not impede adequate appellate review of its decision*

Although the trial court failed to allow the allotted time for the parties to request a statement of decision, the error was harmless.  The lengthy Tentative Decision adequately explained the court's reasoning.  (See *Alafi*, *supra*, 106 Cal.App.5th at p. 68

---

[9]  The landlord argues Hasson "waiv[ed] the requirement of a statement of decision" by failing to request one within 10 days of *February 23*, when the court "provided counsel with its tentative comments concerning the case."  The court described its remarks on that date as "tentative comments" and said, "I don't know whether it's a tentative ruling at this point."  In any event, the 10-day deadline to request a statement of decision runs from announcement or service of the tentative decision, *whichever is later*.  (Rule 3.1590(d).)  The 10-day period thus ran from the date of service of the Tentative Decision—February 27.

["In certain circumstances, even without a statement of decision, a judgment may nevertheless contain a satisfactory explanation of the trial court's reasoning."].) Hasson acknowledges on appeal that the Tentative Decision shows "the process used and the legal principles applied by the trial court in determining the $17,000 judgment amount in Hasson's favor."

In its motion for a new trial, Hasson identified seven controverted issues and asked the court to issue a statement of decision on those points. But the Tentative Decision addressed all save one of the issues.[10] Hasson also did not raise objections to any of the court's factual findings. Hasson identifies no specific prejudice from the court's entry of judgment on March 9. It has thus failed to carry its burden to show " ' " 'exactly how the error caused a miscarriage of justice.' " ' " (*Parris J. v. Christopher U.* (2023) 96 Cal.App.5th 108, 134; see *Heaps v. Heaps, supra,* 124 Cal.App.4th at p. 292 [procedural issues do "not constitute *reversible* error unless actual prejudice is shown"].)

B.    *The Court Erred in Reducing Hasson's Unjust Enrichment Award by $25,000 To Offset the Landlord's Cost of a New Liquor License, When the Landlord Saved More Than $25,000 in License-related Costs as a Result of Hasson's Breach*

Section 657, subdivision (5), authorizes a trial court to grant a new trial where the damages are excessive or inadequate. On appeal from an order denying a new trial for damages, we

---

[10]    The only issue the court failed to explain was its decision to require the parties to bear their own costs. However, as we discuss below, we reverse the ruling on costs.

15

make all presumptions in favor of the trial court's ruling, " ' " 'which is entitled to great deference because the trial judge, having been present at trial, necessarily is more familiar with the evidence and is bound by the more demanding test of weighing conflicting evidence rather than our standard of review under the substantial evidence rule. . . . [W]e consider the evidence in the light most favorable to the judgment, accepting every reasonable inference and resolving all conflicts in its favor.' " ' " (*Atkins v. City of Los Angeles* (2017) 8 Cal.App.5th 696, 737-738.)

"[A]n individual may be required to make restitution if he is unjustly enriched at the expense of another. [Citation.] A person is enriched if he receives a benefit at another's expense. [Citation.] The term 'benefit' 'denotes any form of advantage.' [Citation.] Thus, a benefit is conferred not only when one adds to the property of another, but also when one saves the other from expense or loss." (*Ghirardo v. Antonioli* (1996) 14 Cal.4th 39, 51.) " 'A saved expenditure or a discharged obligation is no less beneficial to the recipient than a direct transfer.' " (*Professional Tax Appeal v. Kennedy-Wilson Holdings, Inc.* (2018) 29 Cal.App.5th 230, 238.)

We review for abuse of discretion a trial court's decision to grant or deny an equitable award based on unjust enrichment principles. (See *Branscomb v. JPMorgan Chase Bank, N.A.* (2014) 223 Cal.App.4th 801, 806; *Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749,771.) " ' "Whether a plaintiff 'is entitled to a particular measure of damages is a question of law subject to de novo review.' " ' " (*Atkins v. City of Los Angeles*, *supra*, 8 Cal.App.5th at p. 738.) "To the extent the court determined questions of law or applied the law to undisputed facts, we review those determinations de novo." (*Branscomb*, at p. 806.)

The trial court here concluded that the landlord did not breach any provision of the lease, but it determined the landlord would be unjustly enriched if allowed to retain Hasson's $30,000 security deposit and the $12,000 in prepaid rent. However, the court determined that this total of $42,000 that the landlord owed to Hasson should be offset by the $25,000 in damages that the landlord incurred due to Hasson's breach, because the landlord had to obtain a replacement liquor license for $25,000 after Hasson refused to return the original license as Hasson was required to do at the termination of the lease. (See *Sutter v. Madrin* (1969) 269 Cal.App.2d 161, 168 ["A valid off-set is a detriment 'proximately suffered . . . as a result of' the breach."].) The court thus awarded Hasson $17,000 ($42,000 minus $25,000).

Hasson does not challenge the court's findings that Hasson breached the lease by failing to return the liquor license, or that the landlord incurred $25,000 to buy a replacement license. Instead, Hasson argues it was error to reduce Hasson's unjust enrichment award by $25,000 without accounting for the landlord's $31,000 in saved costs as a result of Hasson's breach— the $20,000 liquor license deposit and the $11,000 license acquisition costs the landlord no longer needed to pay back to Hasson—which more than covered the landlord's expenses in obtaining a replacement liquor license.

We agree with Hasson. The court found Hasson was not entitled to recover the $20,000 liquor license deposit because it failed to return the license. It also determined the landlord would have owed Hasson $11,000—the $6,000 ABC transfer fee and an additional $5,000 administrative fee—had Hasson performed under the contract. The landlord acknowledges on

17

appeal it was $31,000 richer as a result of not having to return the $20,000 liquor license deposit and reimburse Hasson's license acquisition costs of $11,000. However, when determining that Hasson owed the landlord $25,000 for the replacement cost of a new license, the court failed to take into account that had Hasson returned the original license, the landlord would have had to reimburse Hasson $31,000. Accordingly, the court failed to consider the landlord's "discharged obligation" to reimburse Hasson $31,000 that resulted from Hasson's breach in failing to return the original license. (*Ghirardo v. Antonioli, supra,* 14 Cal.4th at p. 51.) That $31,000 in savings covered the $25,000 the landlord paid for the replacement license.

The landlord responds that its actual damages were closer to $100,000—the market cost of a liquor license not won in a lottery—and that even accounting for the $31,000 in deposits it retained, it still suffered a net loss of $69,000, even if it was lucky enough to win the lottery and purchase a new license for only $25,000. But the trial court rejected that theory. It found Hasson's "breach of the lease agreement by refusing to transfer the liquor license back to the landlord, therefore, caused the landlord to suffer [approximately] $25,000 in damage." (See *Majestic Asset Management LLC v. The Colony at California Oaks Homeowners Assn.* (2024) 107 Cal.App.5th 413, 426 [" 'A recognized measure of damages for the breach of contract to render service is the reasonable cost of securing performance by other means.' "].)

Nor are we persuaded by the landlord's argument that Hasson benefitted from its breach by retaining a liquor license "now potentially worth $140,000-150,000." The trial court made no such finding, and uncontroverted evidence established the

18

original liquor license could not be sold on the open market at the time and needed an operating restaurant on the Sunset Boulevard premises to remain valid.

In sum, the trial court failed to account for the $31,000 in the landlord's avoided expenses in calculating that the landlord suffered $25,000 in damages. Accordingly, the court erroneously reduced Hasson's unjust enrichment award by $25,000.

C. *The Court Erred in Determining the Landlord Did Not Breach the Lease by Retaining Hasson's Prepaid Rent*

Although the court found the landlord would be unjustly enriched if permitted to retain the $30,000 security deposit and $12,000 in prepaid rent, Hasson contends the trial court should have concluded the landlord breached the lease by refusing to return those deposits.[11] The court concluded that because Hasson breached the lease, "the landlord was entitled to a setoff from the deposit amounts that the landlord owed to [Hasson] once the lease was lawfully terminated," and that the landlord did not breach the lease by withholding these deposits because it "reasonably exercised its set off rights." Hasson argues the lease required the return of both deposits and that the landlord had no "allowable deductions or set-offs."

We review de novo questions of contract interpretation (*Brown v. Goldstein* (2019) 34 Cal.App.5th 418, 432) and the application of law to undisputed facts, including those involving statutory interpretation (*Niedermeier v. FCA US LLC* (2024)

---

[11] We reach this issue because a determination that the landlord breached the lease could affect the issue of attorney fees and costs on remand.

19

15 Cal.5th 792, 804; *Boling v. Public Employment Relations Bd.* (2018) 5 Cal.5th 898, 912).  The landlord did not breach the lease by failing to return the $30,000 security deposit, but it did commit breach by failing to return the $12,000 in prepaid rent.

Both security deposits and prepaid rent may fall within the scope of Civil Code section 1950.7, which addresses a commercial landlord's ability to withhold such deposits and payments.  (Civ. Code, § 1950.7, subd. (a) ["Any payment or deposit of money the primary function of which is to secure the performance of a rental agreement . . . shall be governed by the provisions of this section."]; see *Aljabban v. Fontana Indoor Swap Meet, Inc.* (2020) 54 Cal.App.5th 482 [§ 1950.7 "governs security deposits for nonresidential leases"].)  Civil Code section 1950.7 provides that a landlord "may claim of the payment or deposit only those amounts as are reasonably necessary to remedy tenant defaults in the payment of rent, to repair damages to the premises caused by the tenant, or to clean the premises upon termination of the tenancy, if the payment or deposit is made for any or all of those specific purposes."  (Civ. Code, § 1950.7, subd. (c).)  Civil Code section 1950.7 thus delineates the circumstances justifying a landlord to withhold a security deposit or prepayment of rent.  The enumerated circumstances do not include Hasson's breach of failing to return the liquor license.

However, "a tenant under a commercial lease may effectively agree to waive the protections of section 1950.7." (*250 L.L.C. v. PhotoPoint Corp.* (2005) 131 Cal.App.4th 703, 718.)  The lease provision with respect to the $30,000 security deposit specifies that "Lessee waives the protections of Ca. Civil Code Sec. 1950.7."  Further, the provision states that the security deposit of $30,000 will only be refunded "in the event that all of

the terms of this Lease have been fully executed by [Hasson] during the existence of this Lease." The lease also explicitly authorizes the landlord to apply the $30,000 security deposit to sums owed as a result of Hasson's breach of any of the terms of the lease. Thus, because the parties waived application of Civil Code section 1950.7 to the $30,000 security deposit, and because the lease terms permitted the landlord to withhold the security deposit if Hasson breached the lease in any way, the landlord did not breach the lease by withholding the $30,000 deposit when Hasson failed to meet its obligation to return the liquor license.

The $12,000 in prepaid rent is another story. Unlike the security deposit provision, the prepaid rent provision does not include a waiver of Civil Code section 1950.7. In any event, the lease provisions do not give the landlord the right to withhold the $12,000 in prepaid rent based on Hasson's breach after the lawful termination of the lease. Rather, both the original lease and the May 19 addendum provide that "if this lease terminates before the expiration date for reasons other than [Hasson's] default," the landlord "shall repay" such prepaid but unearned rent within 30 days. At trial, the landlord admitted it never earned the $12,000 in rent because the restaurant never opened. And the lease terminated due to Heloise's inability to secure a visa, not due to Hasson's "default" of the lease terms. Accordingly, the lease expressly required the Landlord to return the $12,000 within 30 days of Hasson's demand for it, and the Landlord breached the lease by refusing to return that amount purportedly based on Hasson's failure to return the liquor license. (See *Aljabban v. Fontana Indoor Swap Meet, Inc.*, *supra*, 54 Cal.App.5th at pp. 508-509 [because lease did not allow landlord to use security deposit for repairs, landlord breached the

21

lease by withholding the deposit for that reason].)

D.  *The Court Must Award Costs to Hasson and Consider Attorney Fees Requests on Remand*

Hasson challenges the trial court's decision that each party should bear its own costs.  In the trial court, the landlord argued section 1033 gave the trial court discretion to deny Hasson's request for costs because Hasson's $17,000 recovery could have been sought in a limited civil case.  (See *Gramajo v. Joe's Pizza on Sunset, Inc.* (2024) 100 Cal.App.5th 1094, 1102 ["section 1033, subdivision (a), gives the trial court discretion to deny litigation costs altogether when it finds the plaintiff failed to take advantage of the efficiency of a limited civil proceeding as evidenced by the plaintiff's recovery of less than the jurisdictional threshold"].)  However, we have now determined Hasson is entitled to $42,000, an amount that exceeds the $35,000 threshold for recovery in a limited civil case.  (§ 85, subd. (a).)  Section 1032 provides that a prevailing party is entitled as a matter of right to recover costs in an action.  (§ 1032, subd. (b).)  " ' "Prevailing party" ' is defined to include 'the party with a net monetary recovery. . . .' (§ 1032, subd. (a)(4).)  'In competing money claims, where one claim offsets the other, the prevailing party [entitled to costs] is the one in whose favor the net amount is found to be due under the judgment.' [Citation.]  Here, [Hasson] undisputably is the prevailing party for purposes of section 1032 as [it] has a net monetary recovery." (*Public Employees' Ret. Sys. v. Winston* (1989) 209 Cal.App.3d 205, 212.)  On remand, the trial court is directed to assess costs in favor of Hasson.

Hasson also argues it is entitled to attorney fees on appeal as the prevailing party under section 1032, subdivision (b), and pursuant to Civil Code section 1717, subdivision (a), which authorizes the trial court to award reasonable attorney fees and costs to the prevailing party in a contract action if the contract provides for such an award.

"[T]he identification of the party entitled to a fee award [under Civil Code section 1717] must be determined by the final result of the litigation, *i.e.*, after conclusion of the appeal if an appeal is taken." (*Butler-Rupp v. Lourdeaux* (2007) 154 Cal.App.4th 918, 928.) " ' "Although this court has the power to fix attorney fees on appeal, the better practice is to have the trial court determine such fees." ' [Citation.] That is appropriate here, where the trial court has not yet addressed fee entitlement, [the cross-appellant] did not prevail in [its] cross-appeal, and we are remanding" for reconsideration of the cost award. (*Coziahr v. Otay Water Dist.* (2024) 103 Cal.App.5th 785, 833-834.) We therefore need not address Hasson's contention that it is entitled to attorney fees on appeal, as it may move for attorney fees upon remand of the case to the trial court. We express no opinion on whether Hasson is entitled to an attorney fee award.

E.    *The Landlord's Cross-appeal Is Moot*

The landlord's cross-appeal challenging the denial of its motion for attorney fees under section 998 is now moot. The section 998 settlement offer of $21,500 no longer exceeds the amount recovered by Hasson because we are reversing the trial court's order awarding Hasson only $17,000 and instead are directing it to enter an award for $42,000.

23

## DISPOSITION

We reverse the judgment and remand with the following directions. Hasson shall be awarded $42,000 on its cause of action for unjust enrichment. The court shall assess costs in favor of Hasson and consider any timely motions for attorney fees by the parties (case No. B330413).

The appeal from the postjudgment order denying the landlord's motion for attorney fees under section 998 is dismissed as moot (case No. B331301).

Hasson is entitled to its costs on appeal.


STONE, J.

We concur:


MARTINEZ, P. J.


FEUER, J.